UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MRTYRONE D. METCALF,

    **Plaintiff,**

    v.      No. 3:24 CV 620

RON NEAL, *et al.*,

    **Defendants.**

## OPINION and ORDER

Mrtyrone D. Metcalf, a prisoner without a lawyer, filed a complaint. (DE # 5.) Under 28 U.S.C. § 1915A, the court must screen a prisoner's complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a plaintiff is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On January 17, 2023, Metcalf alleges he was being taken out of the "cage" on the restricted housing unit (RHU) at the Indiana State Prison to attend recreation when Sgt. Lewis "pushe[d] the door on [him]." (DE # 5 at 3.) Lt. Wolfe was "standing right their

(sic) when it happened and did nothing. (*Id*.) The door hit him on his left side. Metcalf gave Sgt. Lewis a "look," but Lt. Wolfe told him it was not worth it. (*Id*.) Later that same day, Sgt. Lewis shook his cell down and claimed she found a knife.[1] Metcalf insisted it was not his and told Lt. Wolfe he needed medical attention. Lt. Wolfe told him to wait until the next shift.

When the night shift arrived, the lieutenant on duty took him to the medical center. He received a shot for the pain he was experiencing in his knee and back. He returned to his cell but was still in pain, so Officer Hanley called the medical center. Officer Hanley was informed it was "shift change [and to] call back." (*Id*. at 4.) However, Sgt. Hudson told Officer Hanley not to call back because there was "nothin[g] wrong with him." (*Id*.) Metcalf believes this was because Sgt. Hudson and Sgt. Lewis were friends. Later that same evening, a nurse came to his cell to examine him. She sent him to the medical center, where he received another shot for the pain.

Metcalf continued to experience back pain. He sent four or five medical requests asking to be seen for his back because it was "really hurting." (*Id*.) He was seen by Physician Karen. Despite Metcalf's explanation that Lt. Lewis hit him with the cage door, she wrote in the medical notes that Metcalf had done it himself. About a week and a half later, he was examined by R/N Tiffany Turner. Although Sgt. Robinson told her about Sgt. Lewis and the door, R/N Tiffany wrote in her notes that Metcalf "fell at rec." (*Id*. at 5.) He admits, however, that he was seen by medical "for weeks" about the same

---

[1] He was not written up for it or punished in any other way.

issues and "received for (sic) shots in my arm, 3 different medications and gel for rubbing on my back plus a knee brace and a back wrap." (*Id*.) Despite this care, Metcalf believes the medical staff was covering up Lt. Lewis' role in the cage door incident. He wants to "hold these people responsible for what was done to [him]." (*Id*. at 5.) He has sued Warden Ron Neal, Sgt. Lewis, Lt. Wolfe, Sgt. Hudson, R/N Tiffany Turner, and "Physician Karen Last Name Unnone (sic)" for monetary damages. (*Id*. at 2, 6.)

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotations and citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force can be warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time

3

an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors are explored when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890.

Here, Metcalf alleges Sgt. Lewis walked over to him and purposely pushed the heavy door onto his left side as he was being taken out of the cage. It may be inferred from the complaint that Metcalf was not displaying threatening or aggressive behavior, was not involved in a disruption or disturbance, and was not resisting orders when this occurred. *See e.g., Lewis*, 581 F.3d at 477. He claims the door caused him pain in his knee, chest, and back. Although the details about the incident are sparse and further investigation may reveal the force used was either legitimate under the circumstances or simply negligent, at this preliminary stage—and giving Metcalf the benefit of the inferences to which he is entitled—he has stated a plausible Eighth Amendment excessive force claim against Sgt. Lewis.

Metcalf has also sued Lt. Wolfe for failing to protect him.

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). This is what has become known as a "failure to intervene" basis for

4

a constitutional violation. *Fillmore v. Page*, 358 F.3d 496 506 (7th Cir. 2004). A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005).

Here, Metcalf's description of the incident does not allow an inference that Lt. Wolfe had a realistic opportunity to intervene to stop the slamming of the door. According to Metcalf, Sgt. Lewis simply walked up to the cage and pushed the door onto him while he was stepping out of it. There was no prior warning, and the incident was over in a matter of seconds. Thus, he has not stated a failure to protect claim against Lt. Wolfe.

Metcalf further claims the defendants were deliberately indifferent to his medical needs following the incident. Inmates are entitled to constitutionally adequate care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

Importantly, "'[n]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks*, 555 F.3d at 594. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. In most circumstances, prison officials may rely on the medical staff to provide the inmates with the medical care they need. *See e.g., Walker*, 940 F.3d at 965 (it is generally appropriate to "defer to medical professionals' treatment decisions" unless no competent medical professional would have responded the same way).

Metcalf claims both Lt. Wolfe and Sgt. Hudson delayed his medical treatment the day/night of the incident. However, the details regarding these allegations are sparse. As to Lt. Wolfe, Metcalf states that Lt. Wolfe told Metcalf that he needed to wait until the night shift arrived to receive medical care. However, he does not state how long it was before the shift change, nor does he plausibly suggest that Lt. Wolfe was aware of any sort of urgent or life-threatening injury. Metcalf simply told him, "I need medical attention" (DE # 5 at 3), but he did not say why.[2] Without more, he has not plausibly alleged that Lt. Wolfe deliberately ignored a serious medical need such that it violated the Constitution.

---

[2] In fact, right after the incident, Metcalf states he gave Sgt. Lewis a "look," and Lt. Wolfe told him it was not worth it. (DE # 5 at 3.) He does not suggest that he indicated he was injured or expressed any pain to Lt. Wolfe at that time.

6

When the night shift arrived, Metcalf was taken to the medical center and given a shot for the pain in his knee and back. Later—he does not say exactly when—he asked to return to the medical center, but Sgt. Hudson told the officer not to call the medical center because the staff there was on a shift change and "nothing [was] wrong with him."[3] (*Id.* at 4.) Metcalf admits he was evaluated by a nurse later that same night and given another shot for the pain.[4] He does not say how much time elapsed between the phone call and the evaluation. Again, without additional details, it cannot be plausibly inferred that Sgt. Hudson violated Metcalf's constitutional rights. *See e.g., Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content).

Metcalf does not mention Warden Ron Neal in the body of the complaint, but he does list him as a defendant. To the extent that Metcalf is attempting to hold the Warden liable based solely on his supervisory status, he may not do so. *See e.g., Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal responsibility and that prison officials cannot be held liable for damages solely because they hold supervisory positions).

Finally, Metcalf has sued R/N Tiffany and Physician Karen regarding the medical care he received in the weeks following the incident. Metcalf does not plausibly

---

[3] Metcalf speculates this was because Sgt. Hudson is friends with Sgt. Lewis.

[4] Throughout the complaint, the injury is described only in vague terms of knee, chest, and back pain.

7

allege either of these defendants denied him constitutionally adequate medical care. Indeed, he admits he was evaluated several times in the weeks following the incident and was given shots for pain, three different medications, a gel to rub on his back, a knee brace, and a back wrap. The fact that Metcalf believes they were covering up Sgt. Lewis' role in his injury does not state a constitutional claim considering he provides details suggesting that they treated the injury sufficiently regardless of its cause.

For these reasons, the court:

(1) **GRANTS** Mrtyrone D. Metcalf leave to proceed against Sgt. Lewis in her individual capacity for compensatory and punitive damages for subjecting him to excessive force when she pushed the cage door closed on him on January 17, 2023, in violation of the Eighth Amendment;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Warden Ron Neal, Sargent Hudson, L.T. Wolfe, R/N Tiffany Turner, and Physician Karen Last Name Unnone;

(4) **DIRECTS** the Clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sgt. Lewis at the Indiana Department of Correction, with a copy of this order and the complaint (DE # 5);

(5) **ORDERS** the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Sgt. Lewis to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

Date: October 7, 2025

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT